IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WESLEY PERONE,                          :
                                        :
                    Plaintiff,          :
                                        :
                                        :
          v.                            :       Civil Action No.: 5:18-CV-04345
                                        :
CHADBOURNE ELLIS,                       :       Honorable Cynthia M. Rufe
CHRISTOPHER CRUZ,                       :
TODD FREY,                              :
JOHN GILL,                              :
FRANK NAJERA,                           :
JOHN OR JANE DOE 1,                     :
JOHN OR JANE DOE 2,                     :
JOHN OR JANE DOE 3,                     :
JOHN OR JANE DOE 4,                     :
JOHN OR JANE DOE 5,                     :
JOHN OR JANE DOE 6,                     :
JOHN OR JANE DOE 7,                     :
JOHN OR JANE DOE 8,                     :
JOHN OR JANE DOE 9,                     :
JOHN OR JANE DOE 10,                    :
JOHN OR JANE DOE 11,                    :
JOHN OR JANE DOE 12,                    :
JOHN OR JANE DOE 13,                    :
JOHN OR JANE DOE 14,                    :
JOHN OR JANE DOE 15,                    :
JOHN DOE 16,             and            :
JOHN DOE 17,                            :
                                        :
                                        :
                    Defendants.         :
                                        :

## FOURTH AMENDED COMPLAINT

Plaintiff Wesley David Perone, by and through his undersigned counsel, files this Fourth

Amended Complaint and, in support thereof, avers as follows:

## INTRODUCTION

1.      This is an action for money damages under 42 U.S.C. § 1983 and Pennsylvania law against Defendants Chadbourne Ellis, Christopher Cruz, Todd Frey, John Gill, Frank Najera, John or Jane Doe 1, John or Jane Doe 2, John or Jane Doe 3, John or Jane Doe 4, John or Jane Doe 5, John or Jane Doe 6, John or Jane Doe 7, John or Jane Doe 8, John or Jane Doe 9, John or Jane Doe 10, John or Jane Doe 11, John or Jane Doe 12, John or Jane Doe 13, John or Jane Doe 14, John or Jane Doe 15, John Doe 16, and John Doe 17 in their individual capacities.  All Defendants are members of either the Lehigh County Drug Task Force or the Allentown Police Department.

2.      One of Defendants Cruz, Frey, Gill, Najera, and John Does 1–15 (the "Tackling Officer") used excessive force on Mr. Perone by violently tackling him face-first into a parking lot and exerting extreme pressure on Mr. Perone's back, causing him severe injuries.

3.      Three of Defendants Cruz, Frey, Gill, Najera, and John Does 1–15 (the "Assisting Officers") used excessive force on Mr. Perone by placing extreme pressure on Mr. Perone's neck and slamming Mr. Perone's head into the pavement, causing him severe injuries.

4.      All Defendants except for the Tackling Officer, the Assisting Officers, and Defendants Doe 16 and 17 (the "Bystanding Officers") failed to intervene to prevent the Tackling Officer and the Assisting Officers from using excessive force on Mr. Perone despite having had a realistic and reasonable opportunity to do so.

5.      All Defendants denied Mr. Perone medical care despite his obviously severe injuries by refusing to take him to the hospital for approximately nine hours.

6.      All Defendants intentionally caused Mr. Perone emotional distress with their outrageous conduct.

7.      At least one Defendant conspired with at least one other Defendant to deny Mr. Perone access to the courts by refusing to disclose the identity of the Tackling Officer and omitting details of Mr. Perone's arrest from incident reports.

8.      Because of the Defendants' actions and inactions, Mr. Perone is entitled to money damages.

## PARTIES

9.      Plaintiff Wesley David Perone is a Pennsylvania citizen who currently resides at State Correctional Institution–Benner Township (SCI–Benner), 301 Institution Drive, Bellefonte, Pennsylvania, 16823.

10.      Upon information and belief, Defendant Chadbourne Ellis is a law enforcement officer with the Lehigh County Drug Task Force and was present and participated in Mr. Perone's arrest.  Defendant Ellis is sued in his individual capacity. In all of his actions and inactions complained of herein, Defendant Ellis acted under color of state law.

11.      Upon information and belief, Defendant Christopher Cruz is a law enforcement officer with the Allentown Police Department and was present at the scene and participated in Mr. Perone's arrest.  Defendant Cruz is sued in his individual capacity.  In all of his actions and inactions complained of herein, Defendant Cruz acted under color of state law.

12.      Upon information and belief, Defendant Todd Frey is a law enforcement officer with the Allentown Police Department and was present and participated in Mr. Perone's arrest. Defendant Frey is sued in his individual capacity.  In all of his actions and inactions complained of herein, Defendant Frey acted under color of state law.

13.      Upon information and belief, Defendant John Gill is a law enforcement officer with the Allentown Police Department and was present and participated in Mr. Perone's arrest.

Defendant Gill is sued in his individual capacity. In all of his actions and inactions complained of herein, Defendant Gill acted under color of state law.

14.     Upon information and belief, Defendant Frank Najera is a law enforcement officer with the Allentown Police Department and was present and participated in Mr. Perone's arrest. Defendant Najera is sued in his individual capacity. In all of his actions and inactions complained of herein, Defendant Najera acted under color of state law.

15.     Upon information and belief, approximately fifteen other law enforcement officers were present and participated in Mr. Perone's arrest. These law enforcement officers are identified as "John or Jane Doe 1," "John or Jane Doe 2," "John or Jane Doe 3," "John or Jane Doe 4," "John or Jane Doe 5," "John or Jane Doe 6," "John or Jane Doe 7," "John or Jane Doe 8," "John or Jane Doe 9," "John or Jane Doe 10," "John or Jane Doe 11," "John or Jane Doe 12," "John or Jane Doe 13," "John or Jane Doe 14," and "John or Jane Doe 15." Plaintiff is currently unable to name these law enforcement officers. Plaintiff hopes to name these law enforcement officers through discovery and reserves the right to amend the caption and Fourth Amended Complaint at such time as they may be identified, pursuant to Federal Rule of Civil Procedure 15. Defendants Doe 1–15 were, at all times material to the claims alleged herein, law enforcement officers with the Lehigh County Drug Task Force or the Allentown Police Department. Defendants Doe 1–15 are sued in their individual capacities. In all of their actions and inactions complained of herein, Defendants Doe 1–15 acted under color of state law.

16.     Upon information and belief, two law enforcement officers were not present at the scene of the arrest, but observed the severity of Mr. Perone's injuries at the Allentown Police Station and refused to provide Mr. Perone with appropriate medical assistance. These law enforcement officers are identified as "John Doe 16" and "John Doe 17." Plaintiff cannot

currently identify these law enforcement officers. Plaintiff hopes to identify these law enforcement officers through discovery and reserves the right to amend the caption and Fourth Amended Complaint after such time as they may be identified, pursuant to Federal Rule of Civil Procedure 15. Defendants Doe 16 and 17 were, at all times material to the claims alleged herein, law enforcement officers with the Allentown Police Department. Defendants Doe 16 and 17 are sued in their individual capacities. In all of their actions and inactions complained of herein, Defendants Doe 16 and 17 acted under color of state law.

## JURISDICTION AND VENUE

17.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

18.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this action arises pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights, under the color of state law, secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

19.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to the Fourth Amended Complaint occurred in Lehigh County in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

21.     On October 10, 2016, at approximately 5:00 p.m., Mr. Perone ordered food and two water bottles from a Wingstop restaurant located in a shopping center at 1601 Liberty Street, Allentown, Pennsylvania.

22.     Mr. Perone carried the water bottles to his car parked in the shopping center's parking lot. He walked to the passenger side of his car and handed one of the water bottles to

his friend, Ms. Ashleem Vanessa Rivera-Rodriguez, who was sitting in the passenger seat.  Mr. Perone then began walking to the driver's side of the car.

23.     Suddenly and without any warning, announcement, or self-identification, the Tackling Officer violently tackled Mr. Perone from behind, slamming him face-first into the pavement.  The Tackling Officer wore plain clothes and was not in uniform.

24.     Mr. Perone's head, right arm, and left knee made violent impact with the pavement, causing him severe injuries.

25.     Within seconds, the Assisting Officers jumped on Mr. Perone.  As Mr. Perone lay face-first on the pavement, one of the Assisting Officers pressed his elbow into the back of Mr. Perone's neck, slamming Mr. Perone's face into the pavement while two of the Assisting Officers held down Mr. Perone's arms.  The Tackling Officer kept his entire body weight on Mr. Perone's back while he handcuffed him.  Even after the Tackling Officer handcuffed Mr. Perone, one of the Assisting Officers continued to shove Mr. Perone's face into the pavement as the other Assisting Officers and the Tackling Officer used their combined body weight to crush him against the pavement.

26.     While the Tackling Officer and the Assisting Officers applied tremendous pressure to Mr. Perone's back and neck, Mr. Perone asked them to identify themselves.  But they did not, and instead continued to crush Mr. Perone.  Mr. Perone told them he could not breathe, but they continued to place tremendous pressure against Mr. Perone's neck and back.  Ms. Rivera-Rodriguez witnessed this entire incident.

27.     The Bystanding Officers also witnessed the entire incident, which lasted between one and two minutes.  The Bystanding Officers were within twenty feet of plaintiff, but made

no attempt to intervene.  Instead, several of the Bystanding Officers drew their guns and kept them pointed at Mr. Perone.

28.    Mr. Perone later discovered that the Tackling Officer, the Assisting Officers, and the Bystanding Officers had attempted to carry out a "buy-bust" operation.  Upon information and belief, it is typical for the Lehigh County Drug Task Force and the Allentown Police Department to deploy at least twenty total officers in buy-bust operations.  These officers planned to observe Mr. Perone sell drugs to a confidential information, then arrest Mr. Perone. But none of the officers observed Mr. Perone sell drugs or engage in any illegal activity.

29.    None of the officers announced their presence or told Mr. Perone to surrender before the Tackling Officer tackled him from behind.

30.    Mr. Perone never resisted arrest, fled, or attempted to flee.

31.    Mr. Perone had no weapons on his person or in his car.

32.    As a result of the tackle and subsequent crushing, Mr. Perone sustained numerous severe injuries, including a bone-deep laceration to his right elbow that caused permanent scarring, lacerations to his forehead that caused permanent scarring, an abrasion to his left knee, a concussion, various contusions, and emotional distress.

33.    After crushing Mr. Perone against the pavement, the officers sat Mr. Perone up to question him.  Mr. Perone felt extreme pain.  His face was bloodied.  His gray sweatshirt and sweatpants displayed visible blood stains.  He felt dizzy and lightheaded.

34.    One officer attempted to question Mr. Perone.  Mr. Perone asked for his name and the officer identified himself as Defendant Ellis.

35.    While seated, Mr. Perone observed Defendant Ellis and the Tackling Officer conversing.  Mr. Perone heard the Tackling Officer bragging about his football prowess.

Defendant Ellis congratulated the Tackling Officer, telling him, "That's how you take a motherfucker down!"

36.     Mr. Perone asked Defendant Ellis to take him to the hospital.  Upon information and belief, the Tackling Officer, the Assisting Officers, and the Bystanding Officers heard Mr. Perone's request to go to the hospital.

37.     Defendant Ellis told Mr. Perone he would not be taken to the hospital unless he "cooperated."  In response, Mr. Perone invoked his Miranda rights and repeatedly requested to be taken to the hospital.  Over the next twenty minutes, Mr. Perone asked Defendant Ellis to take him to the hospital at least ten times, requests that the Tackling Officer, the Assisting Officers, and the Bystanding Officers overheard.

38.     Despite being a mere three blocks away from Lehigh Valley Hospital, none of these officers took Mr. Perone there.

39.     Instead, at around 5:45 p.m., an officer transported Mr. Perone to the Allentown Police Station.  After arriving, Mr. Perone asked Defendant Doe 16 to take him to the hospital. Instead of taking Mr. Perone to the hospital, Defendant Doe 16 simply applied gauze to the wound on Mr. Perone's elbow, which was still bleeding, then made him wait in the station's "bullpen" for questioning.

40.     At around 7:15 p.m., Defendant Doe 17 took Mr. Perone to a room for questioning.  Mr. Perone invoked his Miranda rights and asked Defendant Doe 17 to take him to the hospital, to no avail.  Mr. Perone returned to the bullpen.

41.     Starting around 7:30 p.m., Defendant Ellis attempted to question Mr. Perone approximately every thirty minutes.  Mr. Perone requested hospital care each time.  During this time, Mr. Perone continued to experience pain, dizziness, and lightheadedness from his injuries.

Dried blood smeared his face, and blood stains remained visible on his sweatshirt and sweatpants. Still, Defendant Ellis denied Mr. Perone's requests for approximately seven hours.

42.     At around 2:10 a.m., a police officer transported Mr. Perone to Lehigh County Jail. Upon arriving, Mr. Perone underwent a medical examination. The police officer had already left by the time Mr. Perone was examined.

43.     A nurse examined Mr. Perone. She immediately expressed concern at his condition, noting that the laceration to Mr. Perone's elbow was bone-deep. Due to the severity of Mr. Perone's injuries, the nurse informed the police she refused to admit him.

44.     Within five minutes of Mr. Perone's arrival at the jail, the officer who transported him there returned to take him to the hospital.

45.     Approximately nine hours after the Tackling Officer and the Assisting Officers injured Mr. Perone, he was taken to Sacred Heart Hospital, where he received medical attention.

46.     Later that night, Mr. Perone returned to the Lehigh County Jail and was admitted. During his stay at the Lehigh County Jail, Mr. Perone was placed in the prison's concussion protocol. Every four hours, a nurse checked on Mr. Perone's health. For the next week, Mr. Perone visited the jail's medical ward twice a day.

47.     The Commonwealth of Pennsylvania ultimately charged Mr. Perone with possession with intent to deliver a controlled substance and receiving stolen property, to which he pled guilty. During his criminal proceedings, Mr. Perone attempted to obtain discovery identifying the Tackling Officer. But the Commonwealth never produced his identity.

48.     On his official incident report, Defendant Ellis wrote that "Perone was taken into custody without incident." The report did not mention the tackle, the identity of the Tackling

Officer, or Mr. Perone's injuries. Defendant Ellis filed the incident report on October 17, 2016, one week after the arrest occurred.

49.    As a direct and proximate result of the Defendants' actions and inactions, Mr. Perone suffered injuries, including a bone-deep laceration to his right elbow that caused permanent scarring, lacerations to his forehead that caused permanent scarring, an abrasion to his left knee, a concussion, various contusions, and emotional distress.

50.    As a direct and proximate result of the Defendants' actions and inactions, Mr. Perone has suffered permanent injury, including impairment of mobility in his right elbow, numbness in his right elbow, back spasms, recurring headaches, inability to exercise, difficulty sleeping, nervousness, paranoia, panic, and anxiety.

51.    Before his arrest, Mr. Perone worked in a warehouse and as a barber. As a warehouse worker, Mr. Perone stood for long periods of time and lifted heavy objects. As a barber, Mr. Perone stood for long periods of time and made heavy use of his right arm. Upon information and belief, the injuries Mr. Perone suffered as a result of the excessive force applied by Defendants will impair or prevent him from resuming those occupations.

52.    At all relevant times, all Defendant officers acted under color of state law.

53.    All claims alleged herein are predicated upon violations of applicable law and controlling doctrine that at all times relevant to this incident was clearly established and that all Defendant officers knew or reasonably should have known was clearly established at the time of their actions and inactions complained of herein.

## COUNT I:
## VIOLATION OF 42 U.S.C. § 1983
## ILLEGAL USE OF EXCESSIVE FORCE
(Against the Tackling Officer and the Assisting Officers)

54.    Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

55.    The Tackling Officer used excessive force in violently tackling Mr. Perone, and slamming his knee, arm, and head into the ground, resulting a bone-deep laceration to his right elbow that caused permanent scarring, lacerations to his forehead that caused permanent scarring, an abrasion to his left knee, a concussion, various contusions, and emotional distress. The Tackling Officer continued to use excessive force by placing his entire body weight on Mr. Perone's back and spine, crushing him against the pavement and causing contusions, bruising, and chronic pain in Mr. Perone's back.

56.    The Assisting Officers used excessive force by holding Mr. Perone's arms down, applying tremendous pressure to Mr. Perone's neck, and slamming his head into the ground several times, resulting in a brief period of asphyxiation, a concussion, a laceration to Mr. Perone's temple, and chronic pain to Mr. Perone's head and neck.

57.    As a direct and proximate result of the Tackling Officer's and Assisting Officers' conduct, Mr. Perone was deprived of his rights and privileges secured by the Fourth Amendment of the United States Constitution to be free from excessive force.

58.    The actions of the Tackling Officer and Assisting Officers were willful, wanton, reckless, callously indifferent, and in conscious disregard for the safety of others.  As a direct and proximate result of the Tackling Officer's actions, Mr. Perone sustained severe injuries.

59.    The Tackling Officer's and Assisting Officers' actions were of such an outrageous nature as to rise to the level of intentional, willful, wanton, or reckless conduct.

11

## COUNT II:
### VIOLATION OF PENNSYLVANIA LAW
### ASSAULT
(Against the Tackling Officer and the Assisting Officers)

60.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

61.     The Tackling Officer assaulted Mr. Perone by violently tackling Mr. Perone, and slamming his knee, arm, and head into the ground, resulting a bone-deep laceration to his right elbow that caused permanent scarring, lacerations to his forehead that caused permanent scarring, an abrasion to his left knee, a concussion, various contusions, and emotional distress. The Tackling Officer continued to assault Mr. Perone by placing his entire body weight on Mr. Perone's back, crushing him and resulting in contusions, bruising, and chronic pain in Mr. Perone's back.

62.     The Assisting Officers assaulted Mr. Perone by holding Mr. Perone's arms down, applying tremendous pressure to Mr. Perone's neck, and slamming his head into the ground several times, resulting in a brief period of asphyxiation, a concussion, a laceration to Mr. Perone's temple, and chronic pain to Mr. Perone's head and neck.

63.     The Tackling Officer and the Assisting Officers acted intentionally.

64.     The force used by the Tackling Officer and the Assisting Officers was excessive and unreasonable under the circumstances.

## COUNT III:
### VIOLATION OF PENNSYLVANIA LAW
### BATTERY
(Against the Tackling Officer and the Assisting Officers)

65.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

66.     The Tackling Officer committed battery against Mr. Perone by violently tackling Mr. Perone, and slamming his knee, arm, and head into the ground, resulting a bone-deep

laceration to his right elbow that caused permanent scarring, lacerations to his forehead that caused permanent scarring, an abrasion to his left knee, a concussion, various contusions, and emotional distress. The Tackling Officer continued to commit battery against Mr. Perone by placing his entire body weight on Mr. Perone's back, crushing him and resulting in contusions, bruising, and chronic pain in Mr. Perone's back.

67.     The Assisting Officers committed battery against Mr. Perone by holding Mr. Perone's arms down, applying tremendous pressure to Mr. Perone's neck, and slamming his head into the ground several times, resulting in a brief period of asphyxiation, a concussion, a laceration to Mr. Perone's temple, and chronic pain to Mr. Perone's head and neck.

68.     The Tackling Officer and the Assisting Officers acted intentionally.

69.     The force used by the Tackling Officer and the Assisting Officers was excessive and unreasonable under the circumstances.

**COUNT IV:**
**VIOLATION OF 42 U.S.C. § 1983**
**FAILURE TO INTERVENE**
(Against the Bystanding Officers)

70.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

71.     The Bystanding Officers were present when Mr. Perone's constitutional rights and privileges were being violated as alleged in Count I.

72.     The Bystanding Officers knew or had reason to know that Mr. Perone's constitutional rights and privileges were being violated as alleged in Count I.

73.     The Bystanding Officers had a reasonable and realistic opportunity to intervene as Mr. Perone's constitutional rights and privileges were being violated as alleged in Count I.

74.     The Bystanding Officers failed to intervene when Mr. Perone's constitutional rights and privileges were being violated as alleged in Count I.

75.     As a direct and proximate result of the Bystanding Officers' failure to intervene, Mr. Perone was deprived of rights and privileges secured to him by the Fourth Amendment of the United States Constitution to be free from the use of excessive force.

**COUNT V:**
**VIOLATION OF 42 U.S.C. § 1983**
**FAILURE TO SUPERVISE**
(Against Defendant Ellis, the Assisting Officers, and the Bystander Officers)

76.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

77.     Upon information and belief, one or more of Defendant Ellis, the Assisting Officers, and the Bystanding Officers had supervisory authority over the Tackling Officer and the other Assisting Officers during Mr. Perone's arrest.

78.     Defendant Ellis, the Assisting Officers, and the Bystanding Officers knew or should have known that Mr. Perone's constitutional rights and privileges were being violated as alleged in Count I.

79.     Defendant Ellis, the Assisting Officers, and the Bystanding Officers personally directed, had actual knowledge of, or acquiesced to the violation of Mr. Perone's constitutional rights and privileges as alleged in Count I.

80.     As a direct and proximate result of Defendant Ellis's, the Assisting Officers', and the Bystanding Officers' conduct, Mr. Perone was deprived of rights and privileges secured to him by the Fourth Amendment of the United States Constitution to be free from the use of excessive force.

**COUNT VI:**
**VIOLATION OF 42 U.S.C. § 1983**
**DENIAL OF MEDICAL CARE**
(Against all Defendants)

81.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

14

82.     Mr. Perone suffered severe, visible injuries as a result of being tackled to the pavement, including a bone-deep laceration to his right elbow that caused permanent scarring, lacerations to his forehead that caused permanent scarring, an abrasion to his left knee, a concussion, and various contusions.

83.     Mr. Perone asked Defendant Ellis to take him to the hospital while his injuries were clearly observable to Defendant Ellis, the Tackling Officer, the Assisting Officers, and the Bystanding Officers.  Upon information and belief, all of these officers heard Mr. Perone's request.  But all Defendants refused to take him to the hospital.

84.     Mr. Perone also asked Defendants Doe 16 and 17, who saw the severity of Mr. Perone's wounds at the Allentown Police Station, to take him to the hospital, but they refused.

85.     Defendants knew or should have known that Mr. Perone had a serious medical need after he was violently tackled to the pavement.

86.     Defendants displayed deliberate indifference to Mr. Perone's medical need and consciously disregarded a substantial risk of serious harm to Mr. Perone by refusing his requests to go to the hospital for a total of nine hours.  This deliberate indifference and conscious disregard of a substantial risk of serious harm to Mr. Perone violated his due process rights under the Fourteenth Amendment of the United States Constitution.

## COUNT VII:
### VIOLATION OF PENNSYLVANIA LAW
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against all Defendants)

87.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

88.     The Defendants' actions and inactions, including tackling Mr. Perone, slamming his head into the ground, denying him medical care, and conspiring to deny him access to the courts were extreme, intentional, and outrageous.

15

89.     As a direct and proximate result of the actions and inactions of these Defendants,

Mr. Perone suffered severe emotional distress.

90.     Defendants' actions and inactions were of such an outrageous nature as to rise to

the level of intentional, willful, wanton, or reckless conduct.

**COUNT VIII:**
**VIOLATION OF 42 U.S.C. § 1983**
**DENYING ACCESS TO THE COURTS AND**
**CONSPIRING TO DENY ACCESS TO THE COURTS**
(Against all Defendants)

91.     Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

92.     By their actions and inactions, the Defendants have acted in concert to obfuscate,

misrepresent, and refuse to provide information necessary to Mr. Perone's ability to litigate the

civil claims contained in Counts I–VII above.

93.     Mr. Perone's ability to litigate the civil claims contained in Counts I–VII above

is currently impaired because the Defendants conspired to deny and have denied Mr. Perone his

right of access to the courts by taking one week to write an incident report, omitting the identity

of the Tackling Officer from the incident report, omitting descriptions of Mr. Perone's arrest

and injuries from incident reports, refusing to disclose the identity of the officer who tackled

Mr. Perone, and falsely representing that Mr. Perone was "arrested without incident."

94.     As a direct and proximate result of the Defendants' actions, Mr. Perone is being

deprived of the right of access to the courts secured to him by the First and Fourteenth

Amendments of the United States Constitution.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Wesley David Perone respectfully requests this Court grant judgment jointly and severally in his favor and against the Defendants as follows:

1.    Compensatory damages;

2.    Punitive damages;

3.    Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

4.    Expert fees, costs, and the expenses of litigation;

5.    Any and all equitable relief that this Court may deem equitable and proper under the circumstances, including but not limited to training, disciplinary measures, and revisions to unlawful policies and customs; and

6.    Such other and further damages as this Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action for all issues so triable.

Dated: February 4, 2020                    Respectfully submitted,

Timothy D. Gilbert (Pa. I.D. No. 327957)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Telephone: 215-988-2937
Fax: 215-988-2757
Email: timothy.gilbert@faegredrinker.com

*Attorney for Plaintiff Wesley Perone*

## **CERTIFICATE OF SERVICE**

I, Timothy D. Gilbert, hereby certify that on February 4, 2020, a true and correct copy of

Plaintiff's Fourth Amended Complaint was served via electronic mail upon the following:

Lisa R. Cipoletti
Chief Deputy District Attorney, Lehigh County
455 W. Hamilton Street
Allentown, PA 18101

Paul G. Lees
Marshall Dennehey Warner Coleman & Goggin, P.C.
4905 W. Tilghman Street, Suite 300
Allentown, PA 18104

*Attorneys for Defendants*

Dated: February 4, 2020

Respectfully submitted,

Timothy D. Gilbert (Pa. I.D. No. 327957)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Telephone: 215-988-2937
Fax: 215-988-2757
Email: timothy.gilbert@faegredrinker.com

*Attorney for Plaintiff Wesley Perone*